IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSIAH CLARK,

                    Plaintiff,

        v.                            Case No. 18 C 5142

GLEN D. TRAMMELL and DANIEL        Judge Harry D. Leinenweber
ALVAREZ,

                  Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Josiah Clark ("Clark") is a pretrial detainee at Cook County Department of Corrections who suffers from epilepsy. For most of his detention, Clark has received medication for his epilepsy, but at lower dosages than what he was taking immediately prior to his detention. Clark alleges that the lower dosages caused several serious symptoms, including a grand mal seizure that he suffered in his cell on May 19, 2018. As a result, Clark brings claims under 42 U.S.C. § 1983 against various employees of the Cook County Health and Hospital System, whom he charges with failing to provide him with adequate medical care, and of the Cook County Department of Corrections, whom he charges with failing to respond to his grand mal seizure.

Before the Court is Defendant Trammell's Motion for Summary Judgment on Count I, arguing that Plaintiff failed to exhaust his

administrative remedies, pursuant to the Prisoner Litigation Reform Act, ("PLRA") 42 U.S.C. § 1997e(a). For the reasons stated herein, the Motion is granted.

## I. <u>BACKGROUND</u>

### A. Facts

#### 1. *Parties*

Josiah Clark has been a pretrial detainee at Cook County Department of Corrections ("CCDOC") since December 19, 2016. (Order on Defendant's Motion to Dismiss at 1, Dkt. No. 64.) At all relevant times, Clark was housed at the Cermak facility. (*Id.*) Glen Trammell ("Trammell") was at all relevant times a physician's assistant employed by CCDOC to work at the facility as a medical provider. (*Id.*)

#### 2. *Medical History*

Clark was diagnosed with epilepsy in 2009. (Pl. Statement of Additional Fact (PSOF) at ¶ 1, Dkt. No. 134.) Clark is prone to "petit mal" seizures (characterized by rapid blinking and staring) and "grand mal" seizures (characterized by convulsions and loss of consciousness). (PSOF at ¶¶ 3-4.) To prevent seizures, Clark takes an anticonvulsant medication called Dilantin. (Order at 1.) Experts define satisfactory seizure control as "having no seizures." (PSOF Exhibit 3, Dkt. No. 135.) The recommended daily dosage of Dilantin for an epileptic adult is 300 to 400 milligrams.

- 2 -

(*Id.*; Order at ¶ 1.) Immediately prior to his pretrial detention with CCDOC, Clark's primary care physician had prescribed him a daily dosage of 400 milligrams of Dilantin. (PSOF at ¶ 8.) Clark received that amount because dosages of 200 or 300 milligrams were unable to control his seizures. (Order at 1.) Clark himself has had no formal medical training. (PSOF at ¶ 10.)

On September 16, 2017, Trammell decreased Clark's daily dosage of Dilantin to 300 milligrams per day, without explanation. (Dkt. No. 64 at 2.) Clark continued to receive that dosage for the next eight months, until May 19, 2018. (*Id.*)

At about 2:50 a.m. on May 19, 2018, Clark suffered a grand mal seizure in his cell. (*Id.*) The seizure lasted ten to fifteen minutes, during which Clark's cellmate pressed the distress button inside their cell — one reserved for inmates with serious medical needs – and verbally called for help. (*Id.*) But neither the on-duty watch lieutenant nor any on-duty correctional officer – who failed to make their routine rounds throughout Clark's cellblock — responded to these calls for help. Trammell did not check his phenytoin levels and prescribed less than 400 milligrams Dilantin in the months preceding the occurrence. (PSOF at ¶ 24.)

### 3. *Grievances*

Clark filed multiple grievances during his stay in CCDOC's custody. The CCDOC's grievance procedure is delineated on the

Inmate Grievance Forms. (*See* Exhibit 4, Grievances, Dkt. No. 123-4.) To submit a grievance properly, an inmate is required to submit an Inmate Grievance Form within fifteen (15) days of an incident or problem being grieved. (*Id.*) The Inmate Grievance Form requires the date, time, and specific location of the triggering incident, as well as the "name and/or identifiers of the accused." (*Id.*) The form provides eight blank lines for the inmate to describe their grievance. The grievance "must not contain more than one issue," and it "must not be a repeat submission of a grievance." (*Id.*) The stated rationale for one-issue-per-grievance-form rule is that it allows CCDOC to delegate grievances according to the office involved. (Exhibit 3 Declaration of John Mueller, ¶ 12, Def's Response to Pl.'s Statement of Additional Facts ("DSOF")) ¶ 1, Dkt. No. 141.) If an inmate receives a response that they wish to appeal, they must appeal within 15 days of receiving the response. (Grievances.)

Between May 19 and May 21, 2018, Clark filed grievance 201805772. (DSOF at ¶ 12.) In it, Clark identified the date, time, and specific location of the incident. (Grievances at 19.) He identified the accused as "11pm-7am Shift officers." He described the grievance in its entirety as follows:

> I hit the emergency response button in my cell after my cell mate [ ] notified me that I had a seizure while we was talking. He said I fell out of my bed and hit my head on the desk and floor. I began shaking and foaming

> at the mouth. After I got back conscience I got up in
> confusion and press the button and knocked on the door
> with no response. The officer was not in the room or on
> the tier. I tried to wait but I felt dizzy and had to
> lay back down. The seizure has made my head hurt.

(*Id.*) Upon receipt of grievance 201805772, CCDOC directed it to

"Security Procedures." (Def. SOF Exhibit 3, Declaration of John

Mueller at ¶ 12, Dkt. 123-3.) CCDOC's response indicated that

"Command Staff has be[en] alerted." (Grievances at 19-20.) Clark

appealed the May 19 grievance on June 7, 2018. (*Id.* at 20.) The

appeal was rejected with the explanation, "per medical, detainee

was seen by a nurse and cleared of injuries." (PSOF at ¶ 14.) The

reasoning cited was the "[a]ppeal basis is unclear; original

response to stand." (Grievances at 20.)

Around January 11, 2019, Clark filed grievance no. 201900519

listing the incident date as January 10, 2019, the time as "7am-

3pm," the location as "D-8 3G," and the accused as "None

compliant/RTU." (Grievances at 31.) He described his grievance in

its entirety as follows:

> I supposed to take 400 mg of Dilantin a day. It is
> necessary for my epilepsy. Two weeks ago, they took blood
> and it said I was .2% over the necessary amount in blood.
> Since then the cut my dose in half, by 50%. I was taking
> 400 mg before I got lock up from my neurologist at Oak
> Forest Hospital. Now being in here they keep playing
> with medication and now I'm feeling dizzy and sleepy. My
> head been hurting lately.

(*Id.*) On January 24, 2019, CCDOC submitted a response stating,

"Mr. Clark, please ask provider to provide education for you about

toxicology of the medication for your seizures. Perhaps in your grievance you are concerned about the [illegible] level of medication ordered." (*Id.* at 32.)

Clark did not appeal. He explained his reason for not appealing was that it was "not worth it." (Exhibit 5, Clark Dep. ¶¶ 68:10-69:19, Dkt. No. 123-5.) Clark appealed other grievances before and after this one. (DSOF at ¶ 19.)

### B. Procedural Posture/History

When ruling on a motion to dismiss related to Clark's Third Amended Complaint, the Court found Clark stated a claim against Trammell with respect to the daily dosage of 300 milligrams that Clark received between September 16, 2017, and June 1, 2018. (Dkt. No. 64 at 15-16.) Clark filed a Fourth Amended Complaint ("Complaint") (Dkt. No. 105), to which Defendant Trammell answered with an affirmative defense of failure to exhaust administrative remedies. (Dkt. No. 119.)

### II. **LEGAL STANDARD**

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch,* 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law determines materiality. *Id.* In ruling on summary

judgment, the Court construes all facts and draws reasonable inferences in the light most favorable to the nonmovant. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.,* 794 F.3d 871, 874 (7th Cir. 2015) (quotation marks and citation omitted).

While a court typically does not determine the truth of disputed matters at summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986), judges are tasked with determining whether a claim has been exhausted pursuant to § 1997e(a). *Pavey v. Conley,* 544 F.3d 739, 741-42 (7th Cir. 2008). The prison bears the burden of proving the inmate failed to exhaust administrative remedies. *Kaba v. Stepp,* 458 F.3d 678 (7th Cir. 2006); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "[A]ny finding that the judge makes, relating to exhaustion, that might affect the merits may be reexamined by the jury if — and only after — the prisoner overcomes the exhaustion defense and the case proceeds to the merits." *Pavey,* at 742 (7th Cir. 2008).

### III. **ANALYSIS**

#### A. **Grievance No. 201900519**

Clark filed a timely grievance about his Dilantin medication based on a blood test that raised concerns with his medication dosage. The grievance contained the required information. However, there is no dispute that Clark did not appeal his January 2019 grievance. The fact that Clark appealed other CCDOC grievances

before and after this one indicates the exhaustion process remained practically available to him. Because he did not complete CCDOC's appeal process, he did not exhaust his administrative remedies for this grievance.

### B.  Grievance No. 201805772

Clark also filed a timely grievance in August 2018 about on-duty officers failing to respond to his grand mal seizure. Clark argues that this grievance sufficiently alerted Defendants that he was grieving a medical issue because Trammell was aware of Mr. Clark's condition, his medical history, and his detention in a medical treatment unit of Cook County Jail. Clark also argues that the very fact that Clark experienced a grand mal seizure alerted Trammell and other prison officials of an issue with Clark's medication.

Clark attempts to liken the facts of this case to *Boyd v. Pfister,* 2020 WL 6381367, at (N.D. Ill. Oct. 30, 2020), a case in which a grievance complained of the pain an inmate suffered from a cockroach having crawled into his body and prison officials' neglect of his oral pleas for help dealing with it. In *Boyd,* the Court found that the grievance indicating ongoing medical issues from the cockroach in his ear was sufficient to put the facility on notice, despite failing to explain thoroughly the medical care he grieved and failing to identify which individuals ignored his

complaints. *Id.* at *9. There, the court reasoned that because officers ignored complaints of pain and hearing loss caused by the cockroach in the inmate's body and the facility recognized it, he sufficiently satisfied the exhaustion requirements of that institution. *Id.*

Indeed, Clark's complaint of a seizure may have reasonably notified the prison to a medical issue. But that is not enough. *¶ v. Blake,* 578 U.S. 636. The PLRA delegates the setting of the procedural standards to prisons. The CCDOC demands one issue per grievance. Defendant explains that the rationale for the one-issue-per-form requirement is that it allows CCDOC to delegate grievances according to the office involved. In *Boyd,* the reviewing officers classified the grievance as medical. 2020 WL 6381367, at *4. Here, the prison reasonably classified Clark's grievance as a security issue since it named shift officers and started with complaints of the security button. Trammell attests that had Clark complained of his medical care and treatment by Trammell, or anything relating to the cause of his seizure, it would have been directed toward Cermak medical services where the issue could have been addressed. The suggestion that a grievance can only be addressed by one office may prove unreasonably stringent and impractical, especially from an inmate's perspective. What an inmate experiences as one issue, a seizure, may command multiple

bureaucratic pathways to resolution, but the PLRA delegated this decision to the prison, and the prison decided.

Clark argues that requiring someone with no medical training to provide such specificity is too exacting. The Court agrees that requiring someone untrained on medical issues to plead with medical expertise could render exhaustion practically unavailable, but CCDOC's standard differentiating security and medical concerns is not "so opaque" as to do so. *King v. Dart,* No. 22-1611, 2023 WL 2594964, at *3 (7th Cir. Mar. 22, 2023). Clark's January 11, 2019, grievance complaining of his low Dilantin dosage shows that this level of specificity is attainable for him.

Even if the Court found that CCDOC's standard rendered exhaustion unavailable, Clark would still need a substantive connection between his grievance and this Complaint. *Bowers v. Dart,* 1 F.4th 513, 517–18 (7th Cir. 2021). In *Bowers,* the court determined that "the allegation in his grievance — that the correctional officer ignored him during the attack — is substantively distinct from the allegation in his federal complaint—that numerous prison employees knew of the risk and did nothing to protect Bowers from the impending harm *before* it occurred." 1 F.4th 517 (emphasis in original). Like in *Bowers,* this Court finds Clark's grievance substantively distinct from his Complaint. In his Complaint, he alleges that Trammell failed to

check his phenytoin levels and failed to prescribe proper levels of Dilantin in the months preceding the occurrence. Yet, Clark's grievance indicates only that no officer responded immediately to his seizure. Contending that officers failed to come to his aid during his grand mal seizure is not the same as alleging that the prescribing healthcare provider should have predicted yet ignored the risk. Here, like in *Bowers,* Clark's grievance is disconnected from his Complaint.

Clark failed to exhaust his administrative remedies for Count I, the Section 1983 claim against Trammell in his Complaint. The Court grants summary judgement for Defendant Trammell. Count I is dismissed without prejudice. *Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.").

## IV.  CONCLUSION

For the reasons stated herein, Defendant Trammell's Motion for Summary Judgement (Dkt. No. 122) is granted without prejudice.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 3/31/2023

- 11 -